UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID ALAN NOVOSELSKY and
CHARMAIN J NOVOSELSKY,

        Plaintiffs,

v.

        Case No. 23-cv-0757-bhl

UNITED STATES OF AMERICA, et al,

        Defendants.

---

## ORDER ON MOTION TO DISMISS

---

      Plaintiffs David Alan and Charmain J. Novoselsky are suing the United States and several federal agencies (the Department of Justice's Tax Division, the Department of the Treasury, and the Internal Revenue Service) to enforce a settlement agreement, called an Offer in Compromise (OIC), originally intended to resolve the Novoselskys' disputed income tax liabilities. (*See* ECF No. 1.) The IRS later repudiated the OIC, contending that the Novoselskys procured it by lying about their assets, specifically their home. Through this lawsuit, the Novoselskys ask the Court to order the IRS to reinstate the OIC and to quiet title on their home. (*Id.*) Now pending before the Court is the United States' motion to dismiss. (ECF No. 9.) Invoking Federal Rules of Civil Procedure 12(b)(1), the United States argues the Novoselskys' claims must be dismissed as improper efforts to restrain the collection of taxes in violation of both the Tax Anti-Injunction Act (TAIA), 26 U.S.C. § 7421, and the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201. (*Id.*) In the alternative, the United States argues the Novoselskys' claims are barred by sovereign immunity and must be dismissed for lack of jurisdiction under Rule 12(b)(6). (*Id.*)[1] Because the TAIA and DJA prohibit this Court from adjudicating the Novoselskys' claims, the motion to dismiss will be granted.

---

[1] The United States is the proper party for matters arising out of IRS actions. *See Blackmar v. Guerre*, 342 U.S. 512, 514–15 (1952); *Gengler v. IRS*, No. 10-CV-689, 2010 WL 5463314, at *1 (E.D. Wis. Dec. 29, 2010). Accordingly, the Court will treat the United States as the sole defendant and dismiss the other governmental entities named.

# BACKGROUND[2]

Plaintiffs David Alan and Charmain J. Novoselsky live in Pleasant Prairie, Wisconsin. (ECF No. 1 at 1.) From 2009 to 2014, the Novoselskys had "various issues" with their federal income taxes. (*Id.*) In 2022, after lengthy negotiation, the Novoselskys entered into an OIC with the IRS. (*Id.*) An OIC allows individuals to settle their tax debts for less than the full amount owed if they demonstrate financial hardship. *See* Offer in Compromise, Internal Revenue Service, available at https://www.irs.gov/payments/offer-in-compromise. The Novoselskys' OIC generally resolved all of their "remaining tax issues" subject to their making certain agreed-upon payments. (*Id.*)

The Novoselskys insist they fulfilled their obligations under the OIC "in full." (*Id.*) Nevertheless, on May 24, 2023, the IRS sent them a letter revoking the OIC and informing them that it would start tax collection proceedings. (*Id.* at 2.) The IRS contended that Charmain Novoselsky had made a number of misstatements concerning her home during the OIC negotiations. (ECF No. 11-1 at 1.) More specifically, the agency claimed she had misrepresented the nature of her ownership interest in the home, its fair market value, the amount of the loan balance owed to her daughter related to the home, and the value of the mortgage. (*Id.*) According to the IRS, these misrepresentations misled it into accepting the OIC. (*Id.*)

The Novoselskys responded by requesting further detail from the IRS regarding the alleged misrepresentations in the hope that they might attempt to cure and have the OIC reinstated. (ECF No. 1 at 2.) The IRS replied, telling the Novoselskys they had no right to cure or even to seek an internal review of the revocation decision. (*Id.*) Instead, the IRS insisted, all further dealings would be handled by the DOJ's Tax Division. (*Id.*)

Refusing to accept the agency's decision to rescind the OIC, the Novoselskys filed this lawsuit. They insist they made no material misrepresentations and the OIC should remain enforceable. (*Id.* at 2–3.) They also contend that the IRS's conduct against them is a result of "personal animus." (*Id.* at 2.) For relief, the Novoselskys seek reinstatement of the OIC, an order quieting title on their home, and damages. (*Id.* at 2–3.)

---

[2] This Background is largely derived from Plaintiffs' complaint, (ECF No. 1), the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007). It is also derived from the letter the IRS sent to Charmain Novoselsky on May 24, 2023, which is referred to in the complaint and attached to the Novoselskys' brief in opposition to the motion to dismiss. (ECF No. 11-1.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 564–65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Id.* at 565 (citing *Iqbal*, 556 U.S. at 678). While "courts must accept a plaintiff's factual allegations as true, … some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Facial challenges to subject matter jurisdiction under Rule 12(b)(1) similarly require the Court to accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

## ANALYSIS

The United States offers three main arguments for dismissal. First, the government invokes Rule 12(b)(1) and maintains that the Court lacks subject-matter jurisdiction over the complaint because the TAIA and DJA bar the Novoselskys' request for relief. (ECF No. 10 at 2–5.) Second, the government invokes Rule 12(b)(6) and argues that the Novoselskys' claims must be dismissed because they are barred by sovereign immunity. (*Id.* at 6–8.) Third, the government argues the Novoselskys have generally failed to state a claim under Rule 12(b)(6). (*Id.* at 9–11.) The government is correct that the complaint is defective under both Rule 12(b)(1) and (6), and its motion will therefore be granted.

**I.   The Novoselskys' Attempt to Reinstate the Offer-in-Compromise Is Barred by the Tax Anti-Injunction and Declaratory Judgment Acts.**

Subject to certain limited exceptions, the TAIA bars federal courts from entertaining suits challenging tax assessments and collection. In relevant part, the statute provides:

> Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6232(c), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court

> by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a).[3] The Act "protects the Government's ability to collect a consistent stream of revenue [] by barring litigation to enjoin or otherwise obstruct the collection of taxes." *Korte v. Sebelius*, 735 F.3d 654, 669 (7th Cir. 2013) (quoting *NFIB v. Sebelius*, 567 U.S. 519, 543 (2012)); *see also Novoselsky v. United States*, No. 18-C-836, 2018 WL 6305598, at *5 (E.D. Wis. Dec. 3, 2018) (denying motion to amend complaint seeking to add claim for injunctive relief against the IRS because proposed claim barred by TAIA). Disputes over income tax liabilities must generally be raised with the IRS through the United States Tax Court. *See Voelker v. Nolen*, 365 F.3d 580, 581 (7th Cir. 2004).

The DJA generally allows parties to seek a court's legal determination on issues in actual controversy, subject to certain exceptions, including a specific exception for matters concerning federal taxation. Specifically, the DJA provides:

> In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 or title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). The DJA's tax exemption arises from "[t]he Congressional antipathy for premature interference with the assessment or collection of any federal tax." *Rappaport v. United States*, 583 F.2d 298, 302 (7th Cir. 1978) (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n.7 (1974)); *see also Bob Jones*, 416 U.S. at 732 n.7 (concluding the DJA's federal tax exception is "at least as broad" as the AIA); *Lenz v. Brellenthin*, No. 14-CV-481-JPS, 2014 WL 3700893, at *6 n.2 (E.D. Wis. July 25, 2014) (noting that if the plaintiff had sought

---

[3] The exceptions enumerated in Section 7421(a) mostly pertain to actions in Tax Court and are not applicable here. *See Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962) ("The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund.").

declaratory relief for tax liabilities, that claim "would also necessarily fail as a result of the Declaratory Judgment Act").

The United States maintains that the Novoselskys' complaint runs afoul of both statutes. It contends that because the Novoselskys seek reinstatement of the OIC, they "necessarily seek[] to restrain the collection of tax" in violation of the TAIA. (ECF No. 10 at 3.) The government further argues that the request for reinstatement of the OIC is a request for declaratory relief "with respect to Federal taxes," and thus the Novoselskys' suit is also barred by the DJA. (*Id.* at 3–4.) Underlying its invocation of both statutory provisions is the contention that the IRS has the absolute authority to accept, reject, or rescind OICs for the payment of unpaid taxes and any interference by this Court in the exercise of that authority constitutes an improper intrusion into IRS affairs, barred by both the AIA and the DJA. (*Id.* at 3–4 (citing 26 U.S.C. § 7122; 26 C.F.R. § 301.7122-1(e)(5)).)

The Novoselskys concede that the TAIA and DJA generally preclude this Court from "review[ing] a decision by the [IRS] not to accept an OIC." (ECF No. 11 at 2.) But the Novoselskys draw a distinction between *acceptance* of an OIC and *reinstatement* of a "completed OIC." (*Id.* at 2–3.) They insist this action is more properly analyzed as a contract dispute because "[a]n accepted offer in compromise is properly analyzed as a contract between the parties." (*Id.* at 3 (quoting *Dutton v. Comm'r*, 122 T.C. 133, 138 (2004).) The United States rejects the Novoselskys' proposed distinction, arguing that the IRS is being asked to accept less than the full tax debts owed, thus running afoul of both the DJA and TAIA. (ECF No. 15 at 1–2.) The Court agrees with the government.

The TAIA and DJA preclude this Court from granting the Novoselskys the relief they seek. The Novoselskys' chief complaint is that the IRS has refused to reinstate the previous OIC. (*See* ECF No. 11 at 1.) The law is clear that the IRS's ability to provide tax collection alternatives, like OICs, is strictly within its discretion. *Kindred v. Comm'r*, 454 F.3d 688, 695–96 (7th Cir. 2006) (citing 26 U.S.C. § 6330(c)(2)(A) ("The decision to entertain, accept or reject an offer in compromise is squarely within the discretion of the appeals officer and the IRS in general.")). The IRS is also expressly authorized to withdraw an OIC if the taxpayer supplies false information or documents in conjunction with the OIC offer. *See* 26 C.F.R. § 301.7122-1(e)(5)(i). According to the complaint, the IRS revoked the OIC on grounds that the Novoselskys misrepresented several matters in conjunction with negotiating the OIC. (ECF No. 1 at 1; ECF No. 11-1 at 1.) Under

Section 301.7122-1(3)(5)(i), the IRS's decision to withdraw the Novoselskys' OIC fell squarely within its statutory authority. The Novoselskys' insistence that this Court reinstate the OIC would thus run afoul of the limitations on this Court's authority under the TAIA and DJA. This type of suit is barred by the TAIA's elimination of jurisdiction over suits regarding the "collection of any tax" and the DJA's limitation on federal courts' authority to grant declaratory relief in cases "with respect to federal taxes." *See* 26 U.S.C. § 7421(a); 28 U.S.C. § 2201(a).

In insisting the TAIA and DJA do not apply to their claim, the Novoselskys rely on two Tax Court cases: *Dutton v. Commissioner*, 122 T.C. 133 (2004) and *Eaton Corp. v. Commissioner*, 47 F.4th 434, 441 (6th Cir. 2022). Neither supports the Novoselskys' contention that this Court "has the jurisdiction and the authority" to require enforcement of the OIC "without regard to the strictures of the Acts." (ECF No. 11 at 3.) *Dutton* involved a case before the Tax Court, *not* a district court. While it acknowledges that OICs are generally governed by contract principles, it says nothing about federal district courts having jurisdiction over challenges to an IRS decision to accept or rescind an OIC. *See Dutton*, 122 T.C. at 138. *Eaton* involved a dispute over two advance pricing agreements that governed Eaton's tax calculations for 2001 through 2010. 47 F.4th at 436. A few years into the agreements, Eaton discovered inadvertent calculation errors, reported the errors to the IRS, and corrected the mistakes—after which the IRS canceled the agreements and told Eaton it was deficient to the tune of tens of millions of dollars. *Id.* at 436–37. Eaton challenged the IRS's actions in the Tax Court, lost, and then appealed. *Id.* The Sixth Circuit sided with Eaton on all issues because of the IRS's "efforts to circumvent basic contract law." *Id.* But *Eaton* does not support this Court having the jurisdiction to compel reinstatement of an OIC based on allegations of material misrepresentations, the remedy the Novoselskys seek here. *Eaton* began in the Tax Court, not the district court. Similarly, any complaint the Novoselskys have with respect to the IRS's revocation of its OIC must be brought in Tax Court, not in this court.

After the government filed its reply, the Novoselskys offered two additional authorities. (ECF Nos. 16 & 17.)[4] In the Novoselskys' motion, they cite *Baney v. United States*, 168 Fed. Cl. 109 (2023), and point the Court to its "relevant part" in quoting a Seventh Circuit case. (ECF No. 16 at 2–3.) The Novoselskys argue that the cited Seventh Circuit case, *United States v. National Steel Corp.*, 75 F.3d 1146, 1150 (7th Cir. 1996), confirms this Court's jurisdiction to hear this case. (ECF No. 16 at 3.) Like *Dutton* and *Eaton*, *National Steel* has nothing to do with the jurisdictional

---

[4] The Court will grant both requests for supplementation, although neither affects the Court's analysis.

issue here.  In *National Steel*, the Seventh Circuit affirmed a judgment in favor of the IRS in a lawsuit the IRS brought to secure recovery of a tax refund.  In doing so, the Court of Appeals interpreted a "closing agreement" between the IRS and the taxpayer and concluded that while it was a binding contract with the taxpayer it did not preclude the IRS from recovering the tax refund at issue.  *National Steel*, 75 F.3d at 1150.  That case was not a declaratory judgment action or lawsuit seeking to restrain the IRS's collection of taxes—it was a collection action brought in federal court *by the IRS*.  It says not a word about district court jurisdiction.

The Novoselskys also draw the Court's attention to another case (also involving the Novoselskys and the IRS) pending on this Court's docket, Case No. 24-cv-0387-bhl.  (ECF No. 17 at 1.)  The Novoselskys argue that the government's effort to reduce to judgment the Novoselskys' outstanding tax liabilities for 2009, 2010, 2011, and 2015, without mentioning the OIC, means the government "has abandoned *sub silentio* its claim that [the OIC] was vitiated by fraud or mistake."  (*Id.* at 2.)  Of course, the government's filing says no such thing and the Novoselskys cite no authority that would imply such a conclusion.  The Court agrees with the government that the other lawsuit is not a waiver or forfeiture of any defenses the United States has to the claims in this lawsuit (indeed subject matter jurisdiction cannot be waived or forfeited), and any defenses the Novoselskys may have to the other case must be addressed in that case, not this one.

The government's motion to dismiss the Novoselskys' request to reinstate the OIC will be granted.

II. **The Novoselskys' Quiet Title Claim Is Also Barred by the Tax Anti-Injunction and Declaratory Judgment Acts, and, in Any Case, the United States Is Immune from Suit.**

In their request for relief, the Novoselskys also seek "to 'quiet title' … with regard to the property in question."  (ECF No. 1 at 3.)  The United States argues that this request must also be denied as another backdoor and improper attempt to reinstate the OIC.  (ECF No. 10 at 5.)  In response, the Novoselskys clarify that they "seek to establish the priority of the federal tax lien in this action, not simply the propriety of the lien based on the revocation of the OIC."  (ECF No. 11 at 9.)  In reply, the United States contends that a judicial determination of the propriety of a federal tax lien is barred by the TAIA and DJA and, even if it were not, the Novoselskys lack standing to determine the priority of the lien because they are the real property's owners, not creditors.  (ECF No. 15 at 2–3.)  The government also argues that the quiet title claim is barred by sovereign

immunity. Because the quiet title claim is barred by the TAIA, DJA, and sovereign immunity, it will also be dismissed.

### A. Any Quiet Title Claim Is Barred by the TAIA and DJA.

Congress has allowed the United States to "be named a party in any civil action or suit in any district court" "to quiet title to" "real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a). But a party bringing a quiet title claim against the United States must include in the complaint "the name and address of the taxpayer whose liability created the lien and, if a notice of the tax lien was filed, the identity of the internal revenue office which filed the notice, and the date and place of such notice of lien was filed." § 2410(b). If the quiet title suit "really is a suit to challenge [a taxpayer's] tax liability rather than to challenge merely the means for enforcing that liability, it is both outside the scope of the quiet-title act and barred by the anti-injunction act." *See Harrell v. United States*, 13 F.3d 232, 235 (7th Cir. 1993). The Novoselskys do not dispute that questioning the propriety of the tax liens includes questioning the propriety of the taxes themselves. (*See* ECF No. 11 at 9–10.) Accordingly, as explained above, this claim is barred by the TAIA and DJA. *See Harrell*, 13 F.3d at 235.

The Novoselskys' insistence that they simply seek to establish the relative *priority* of the tax lien fares them no better. Federal law governs the priority of conflicting liens. *J.D. Ct., Inc. v. United States*, 712 F.2d 258, 260 (7th Cir. 1983) (citing *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84 (1963)). The Federal Tax Lien Act of 1966 sets forth the rights of private creditors with respect to determining the priority of a federal tax lien. *See* 26 U.S.C. §§ 6321–6326. Section 6323(a) specifically provides "[p]urchasers, holders of security interests, mechanic's lienors, and judgment lien creditors" standing to file suit to determine the priority of a lien. And, in general, plaintiffs have standing to sue when they suffer (1) an injury in fact that is (2) fairly traceable to the challenged action of the defendant and (3) it is likely that the injury will be redressed by a favorable decision. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). For an injury to be particularized, it must affect the plaintiff in a personal and individual way. *Id.* at 529 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).

To the extent that the Novoselskys seek to assert a claim based on the priority of conflicting liens—a generous assumption given their pleading—they have failed to properly state a claim. The Novoselskys explain that there is a "long-standing mortgage" on the property that is held by

a third party and recorded against the title, and they seek to address the priority of the respective liens. (ECF No. 11 at 9.) But they have no standing to do so. Section 6323(a) gives *creditors* the right to determine the priority of liens on real property. The Novoselskys are not the creditors. Nor have they plausibly alleged that they will suffer injury from differing priorities of the various liens on their property. They state in their opposition brief that the IRS's revocation of the OIC "is based in part on an attack on the ownership and encumbrance on the title of the residence," further suggesting that their gripe is with the revocation of the OIC—not a quiet title suit. (*See* ECF No. 11 at 10.) That type of claim is expressly precluded by the TAIA and DJA and must be dismissed. *See Harrell*, 13 F.3d at 235.

### B. In the Alternative, the United States Is Also Protected by Sovereign Immunity for the Novoselskys' Quiet Title Claim.

The government contends that even if the TAIA and DJA did not bar the Novoselskys' quiet title claim, the Court would still be obliged to dismiss the claim on sovereign immunity grounds. "[S]overeign immunity shields the Federal Government and its agencies from suit" unless the government has waived its immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Waivers of sovereign immunity must be "unequivocally expressed" and strictly construed. *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33–34 (1992) (citations omitted). "Any ambiguity must be interpreted in favor of sovereign immunity." *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 824 (7th Cir. 2016) (collecting cases). It is the plaintiffs' burden to prove that the federal government has waived its sovereign immunity and consented to suit. *Macklin v. United States*, 300 F.3d 814, 819 (7th Cir. 2002) (citing *Harrell*, 13 F.3d at 234; *Arford v. United States*, 934 F.2d 229, 231 (9th Cir. 1991)). If a plaintiff has failed to meet its burden, the case must be dismissed. *Dawson v. Great Lakes Educ. Loan Servs., Inc.*, No. 15-cv-475-bbc, 2016 WL 426610, at *3 (W.D. Wis. Feb. 3, 2016) (citing *Macklin*, 300 F.3d at 819).

The government argues that the Novoselskys have not met their burden of showing that it has waived sovereign immunity. As the United States points out, the Novoselskys cite only 28 U.S.C. § 1331 as basis for jurisdiction. (*See* ECF No. 1 at 2.) Section 1331 states, in its entirety: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." That statute by itself does not circumvent the United States' sovereign immunity and does not confer jurisdiction.

The United States further contends that the Novoselskys cannot use 28 U.S.C. § 2410, the quiet title statute, as a source of waiver of sovereign immunity. (ECF No. 10 at 7.) The Court

agrees. As an initial matter, the Novoselskys' complaint does not cite Section 2410. It merely passingly refers to "the right … under federal statute waiving the defense of sovereign immunity and explicitly allowing [Plaintiffs] to bring suit in this Court against the United States to 'quiet title' and/or obtain other relief with regard to the property in question." (ECF No. 1 at 3.) This is problematic for a number of reasons. While a suit properly brought under Section 2410 waives sovereign immunity, *Harrell*, 13 F.3d at 234, such suits must "include the name and address of the taxpayer whose liability created the lien and, if a notice of the tax lien was filed, the identity of the internal revenue office which filed the notice, and the date and place such notice of lien was filed," as well as "set forth with particularity the nature of the interest or lien of the United States." § 2410(b). These requirements are strictly enforced. *See Macklin*, 300 F.3d at 821 n.7 (noting that the plaintiff's pleading deficiency under Section 2410(b), "standing alone, would support the dismissal of his action against the United States"); *Gengler v. IRS*, No. 10-CV-689, 2010 WL 5463314, at *3 (E.D. Wis. Dec. 29, 2010) ("The present complaint does not supply these items [specified by Section 2410(b)] and, by failing to provide them, the plaintiff has not properly shown that the sovereign's immunity has been waived. Accordingly, the complaint should be dismissed." (citing *Dahn v. United States*, 127 F.3d 1249, 1251 (10th Cir. 1997))).

The Novoselskys' complaint falls short of Section 2410(b)'s requirements. It contains the Novoselskys' names and addresses but falls short of all other requirements. (ECF No. 1 at 1, 3.) Rather than tracking the statutory requirements, the Novoselskys' complaint primarily expresses dissatisfaction with the IRS's revocation of the OIC. Indeed, in their opposition brief, the Novoselskys' sole argument with respect to this issue is that the United States has challenged the title of their property by revoking the OIC. (*See* ECF No. 11 at 6–7.) They make no effort to show compliance with Section 2410.

Nor can the Novoselskys avoid this requirement by pleading their status as *pro se* plaintiffs or pointing to government counsel's prior familiarity with the case. (ECF No. 11 at 5–6.) Neither of these facts make up for the complaint's deficiencies. While *pro se* litigants' filings are typically held to a less stringent technical pleading standard, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "pro se litigants are not entitled to a general dispensation of the rules of procedure." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). Moreover, David Novoselsky is not a typical *pro se* plaintiff. As the United States points out, David Novoselsky had a long career as an attorney until he was disbarred in 2020. (ECF No. 15 at 5 n.3.) Novoselsky even told the Chicago Tribune that

since 2014, he "primarily does research [and] writes legal briefs." Todd Lighty, *Lawyer Should Lose License for Misconduct in Case of Girl Who Watched Mother Run Over by Bus, Panel Says*, Chicago Tribune, https://www.chicagotribune.com/2019/06/13/lawyer-should-lose-license-for-misconduct-in-case-of-girl-who-watched-mother-run-over-by-bus-panel-says/ (June 14, 2024). David Novoselsky is much more sophisticated than the typical *pro se* plaintiff. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972) ("[W]e hold [pro se complaints] to less stringent standards than formal pleadings *drafted by lawyers*." (emphasis added)). And the Court agrees with the government that counsel's "[a]ssumed familiarity with the facts of a past case does not alleviate Plaintiffs from properly pleading a claim in this instant case." (ECF No. 15 at 5 n.4.)

### III. The Novoselskys Failed to Exhaust Administrative Remedies, Making the United States Immune from Suit for Their Claim for Damages Pursuant to 26 U.S.C. § 7433.[5]

The Novoselskys' complaint also generally seeks damages but without citing any statutory basis for such relief. (ECF No. 1 at 2.) The government suggests the Novoselskys' damages request might implicate 26 U.S.C. § 7433, but contends that, even if read to invoke this statute, the complaint is insufficient. (ECF No. 10 at 8.) Section 7433 allows persons to bring a civil action for damages against the United States if "in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation under this title." § 7433(a). The statute limits itself to cases where administrative remedies have been exhausted and for violations brought within two years after the date the right of action accrues and reduces damages by the amount that could have reasonably been mitigated by the plaintiff. § 7433(d).

The Novoselskys' complaint does not reference this statute but alleges that the IRS acted improperly as "a result of the personal animus of defendant's counsel." (ECF No. 1 at 2.) In their opposition brief, the Novoselskys state that "[i]t is the manner in which [the OIC] revocation came to pass that creates the issue of damages." (ECF No. 11 at 7.) The Court agrees with the government that to the extent they seek damages under Section 7433, the Novoselskys' pleading is insufficient to support any claim. The Seventh Circuit has held that a plaintiff invoking Section

---

[5] The United States also argues that if the Novoselskys' damages claim "can be construed as a refund claim for the funds paid under the rescinded offer-in-compromise," they still have not complied with the statutory requirements to do so. (ECF No. 15 at 7.) Their claim is clearly one for damages, not refund, thus the Court need not reach this argument.

7433 must allege facts showing an officer or employee of the IRS acted recklessly, intentionally, or negligently to disregard a provision of the Tax Code in connection with the collection of any federal tax. *See Goldberg v. United States*, 881 F.3d 529, 533–34 (7th Cir. 2018). The violations of the Tax Code must be only "in the collection process itself, … not [] alleged violations of law in assessing taxes." *Id.* at 534. Moreover, as a condition precedent to bringing claims in federal court, Section 7433 requires that plaintiffs exhaust their administrative remedies through IRS procedures unless the government waives the issue. § 7433(d)(1); *Goldberg*, 881 F.3d at 533; *Gray v. United States*, 723 F.3d 795, 798 (7th Cir. 2013).

The opaque references to civil damages in the Novoselskys' complaint are insufficient to state a claim under Section 7433. *See Goldberg*, 881 F.3d at 533 ("The problem for plaintiffs here is that they do not allege any misconduct related to the tax collection process."). The allegations are entirely too vague to provide the United States fair notice for what conduct might have been reckless, intentional, or negligent in the collection of the Novoselskys' taxes. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555). And, in any case, the Novoselskys do not allege that they have exhausted their administrative remedies; nor have they alleged that the United States has waived the issue. (*See* ECF No. 1; ECF No. 15 at 6–7.) Therefore, the Novoselskys' claim for damages under Section 7433 likewise fails.

## CONCLUSION

The claims in the Novoselskys' complaint are barred by the TAIA, DJA, sovereign immunity, and a failure to exhaust administrative remedies. Because these defects are structural and not a matter of imprecise language that could be fixed by repleading, providing leave to amend would be futile. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015). Accordingly,

**IT IS HEREBY ORDERED** that the United States' motion to dismiss, ECF No. 9, is **GRANTED**. The complaint is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that the Novoselskys' motions for leave to file additional authority, ECF Nos. 16 & 17, are **GRANTED**.

Dated at Milwaukee, Wisconsin on August 8, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge